SUSAN HEATH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heath v. Commissioner
Docket No. 467-77.
United States Tax Court
T.C. Memo 1980-301; 1980 Tax Ct. Memo LEXIS 283; 40 T.C.M. (CCH) 889; T.C.M. (RIA) 80301; August 7, 1980, Filed *283 Petitioner signed a separation agreement and received monthly payments for her support. Held, petitioner did not sign the agreement under duress or because of fraudulent representations by her exhusband. Therefore, such payments constitute alimony. Jeffrey A. Galant, for the petitioner. Joan Ronder Domike, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency in petitioner's income tax of $3,265 for the taxable year 1973. In an amendment to his answer, respondent claimed an increased deficiency in the amount of $864, for a total deficiency of $4,129. The only issues presented for our consideration are: (1) whether petitioner received alimony during 1973 from her husband under a written separation agreement dated *284 January 1, 1972; and (2) whether, if petitioner is the prevailing party, a reasonable allowance for attorney's fees should be granted. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner, Susan Heath, filed her Federal income tax return for the taxable year 1973 with the status of unmarried head of household. At the time she filed her petition herein, petitioner resided in New York, New York. Petitioner and David L. Glaser were married on June 3, 1956 and had four children. In May 1971, because of marital problems, David and Susan separated. David rented an apartment in New York City and lived there during the week but on weekends often returned to the family home in Woodmere, New York. During 1971, David sent Susan a substantial amount of money for support and in early 1972, David's tax accountant suggested to him that he obtain a written agreement concerning his support payments. The accountant's main concern in having David obtain the agreement was to insure that the Glasers paid the least income tax for 1972 although he was also concerned *285 that the Glasers establish a definite time at which they were separated in order to comply with certain requirements of the divorce laws of the State of New York. The Glasers entered into a written separation agreement one weekend in March 1972 when David was home. The agreement was prepared by David's accountant and dated January 1, 1972. It states, in full, as follows: AGREEMENT between SUSAN CONROY GLASER AND DAVID GLASER. The parties hereto having been married on June 3, 1956, hereby agree to live separate and apart and the DAVID GLASER will make monthly payments of One Thousand Five Hundred ($1,500.00) Dollars to SUSAN CONROY GLASER for her support. Dated: January 1, 1972 Susan Conroy Glaser / SUSAN CONROY GLASER [signature], David Glaser / David glaser/ [signature] Both Susan and David signed the agreement, Susan read the agreement before the signed it. At the time of the agreement, David (and his accountant) were unsure whether the Glasers should file jointly or separately for 1972. In spring 1973, however, while preparing the Glasers' tax returns, David's accountant advised him that by filing individually, there would be substantial tax benefits. Had *286 it been more economical to file jointly the Glasers would have done so. David deducted the payments to Susan, amounting to $25,650 which were made in 45 to 50 payments, on his 1972 income tax return. He also paid Susan's tax liability of $2,500 for 1972 on April 13, 1973. David made 41 payments to Susan during 1973, totaling $17,642.68. [1] He also made the following additional payments on behalf of Susan during 1973 (all prior to October 31, 1973): Date
Payee
Amount
July 24
Long Island Water Corp.
$ 19.09
July 24
New York Telephone Co.
66.25
July 24
Long Island Lighting Co.
61.65
July 24
New York Telephone Co.
132.79
July 24
Security National Bank
509.00
(mortgage payment)
*287 On February 27, 1973, Susan commenced an action for divorce. On October 31, 1973, Susan and David entered into a stipulation and agreement which was filed on December 18, 1973, with the Supreme Court of the State of New York, County of New York. This agreement required David to pay Susan $14,250 during the first year following the agreement and thereafter $13,000 per year, payable in monthly installments of $1,083.34, commencing November 1, 1973. OPINION Section 71(a)(2) [2] provides, in part, that: If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.
*288 The regulations further provide that the separation agreement need not be a legally enforceable instrument. Section 1.71-1(b)(2)(i), Income Tax Regs.
At issue here is the separation agreement dated January 1, 1972, which stated that the parties agreed to live separate and apart and that David would make monthly payments of $1,500 to Susan for her support. Respondent contends that the agreement was signed by both parties in March 1972 and that any payments made pursuant to the agreement during 1973 constitute alimony. Petitioner maintains that the agreement was not signed until spring 1973 and was signed by Susan only under duress and because of fraud on the part of David. Under such circumstances, petitioner argues that none of the payments received in 1973 should constitute alimony received pursuant to a separation agreement. Respondent contests this factual assertion but agrees with petitioner that if the agreement was signed by Susan under duress or because of fraudulent misrepresentations by David, payments made during 1973 pursuant to the agreement would not constitute alimony for purposes of section 71(a)(2). We found respondent's witness, David, to be credible and *289 straightforward, and believe the evidence supports David's testimony that the agreement was signed by Susan without duress in March 1972. During 1972, David made 45 to 50 payments to Susan totaling $25,650. During 1973, including that time prior to which petitioner alleged she signed the agreement, David made regular and substantial payments to Susan. The regularity of those payments goes far to both support David's testimony that they were made pursuant to the agreement and to contradict Susan's testimony tht the payments were sporadic, not in any set amount, nor forthcoming in any set way. Petitioner argues that the agreement was signed in spring 1973 in order to reduce David's tax liability for 1972 by permitting David to deduct the 1972 payments as alimony. [3] There is no dispute that the primary purpose of signing the agreement was to reduce the Glasers' tax liability for 1972, for which David was solely responsible; had the Glasers' joint tax liability been less if they filed joint rather than separate returns, they would have done so. This fact alone carries no probative weight as to when the agreement was signed, however, and David testified that in early 1972 his *290 accountant was aware of the potential tax consequences due to the separation and requested him to obtain the agreement. [4]
Nor do we find sufficient evidence of fraud or duress to invalidate the agreement. Susan testified that David told her that he needed the document for his tax purposes and that it would not affect her. She also testified tht David threatened to stop giving her money if she refused to sign the agreement. This testimony *291 was directly contradicted by David, however, and no other evidence was introduced to support Susan's testimony. We note that the action for divorce was commenced by Susan on February 27, 1973, approximately 2 months before petitioner alleges that she signed the agreement under duress; she was represented by counsel at such time and we find it somewhat implausible that she would simply sign the paper under such a threat. Because we have found that the agreement was signed in March 1972, without duress, we hold that the payments made during 1973, pursuant to this agreement, constitute alimony for purposes of section 71. On May 8, 1978, respondent filed a motion for partial summary judgment denying petitioner's claim for attorneys' fees. The Court took this motion under advisement. Respondent's motion is granted. Key Buick Co. v. Commissioner,68 T.C. 178 (1977), affd. 613 F.2d 1306 (5th Cir. 1980). Decision will be entered under Rule 155.
Footnotes
1. David's payments to Susan during 1973 were as follows: ↩
Date
Amount
January 9
$435.00
16
400.00
26
400.00
31
400.00
February 7
400.00
14
400.00
21
400.00
28
400.00
March 7
400.00
19
400.00
22
400.00
28
400.00
April 8
400.00
13
400.00
17
400.00
25
400.00
May 3
400.00
10
400.00
17
400.00
17
400.00
24
350.00
31
350.00
June 6
375.00
6
350.00
14
100.00
14
350.00
20
350.00
27
350.00
28
500.00
July
August 7
350.00
15
350.00
22
250.00
22
350.00
30
350.00
September 11
700.00
20
350.00
20
350.00
29
1,050.00
October 5
700.00
November 1
1,516.68
December 4
1,516.00
TOTAL
$18,642.68
2. All statutory references are to the Internal Revenue Code of 1954, in effect during the year at issue.↩
3. Although such amounts would be included in petitioner's income tax for 1972, because David and Susan could elect to file separately, their joint tax liability would be reduced; David paid Susan's tax liability for 1972. ↩
4. Respondent contends that one of the purposes for signing the agreement was to establish the date of their separation for purposes of a divorce. Petitioner maintains that David invented this explanation at trial in order to provide a "non-tax" reason for having signed the agreement in March 1972. We attach little weight to this evidence; the agreement could have been as easily backdated in 1973 as it was in 1972. Neither party would have reason to contest the date for these purposes since both wanted the divorce.↩